IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN LANE,** | CIVIL ACTION NO.   2:24-cv-244 |
| *Plaintiff,* | |
| v. | |
| **ATI SPECIALTY MATERIALS, LLC f/k/a ATI POWDER METALS, LLC,** | |
| *Defendant.* | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, John Lane, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and specifically, Justin M. Bahorich, Esquire, who files the within Complaint in Civil Action against Defendant ATI Specialty Materials, LLC f/k/a ATI Powder Metals, LLC, of which the following is a statement:

## THE PARTIES

1. Plaintiff, John Lane ("Plaintiff" or "Mr. Lane") is an adult individual who currently resides in Pittsburgh, Pennsylvania.

2. Defendant ATI Specialty Materials, LLC f/k/a ATI Powder Metals, LLC ("Defendant" or "ATI") is a Pennsylvania Limited Liability Company with a registered address at 116 15th Street, Suite 301, Pittsburgh, Pennsylvania 15222, and a physical address at 1001 Robb Road, Oakdale, Pennsylvania 15071.

3. At all times relevant, ATI employed more than 15 employees.

## JURISDICTION AND VENUE

4. Mr. Lane is a resident and citizen of Pennsylvania and a substantial number of the events or omissions giving rise to the claims occurred in Western Pennsylvania. Therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

5. This Court has supplemental jurisdiction over Mr. Lane's state law claims pursuant to 28 U.S.C. §1367(a).

6. Mr. Lane filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding his allegations on or about October 16, 2023, under case number 533-2024-00267.

7. On November 30, 2023, Mr. Lane received his Notice of Right to Sue from the EEOC. The Complaint now timely follows.

## FACTUAL BACKGROUND

8. On February 20, 2023, Mr. Lane began working for ATI at its warehouse constructing airplane parts.

9. During the hiring process, Mr. Lane told the Hiring Manager and General Foreman, David Spencer ("Mr. Spencer"), that his minor son had special needs as well as cataracts, both of which required that he take off time for doctors' appointments.

10. Mr. Spencer told Mr. Lane that it would not be a problem and that he would get 40 hours of sick time that he could use.

11. Thereafter, whenever Mr. Lane used sick leave, it would be reflected in his paystubs and on the ADP payroll app.

12. On March 23, 2023, Mr. Lane's son had a doctor's appointment, and Mr. Lane gave a doctor's note to his employer.

13. Another time in March 2023, Mr. Lane's son had another doctor's appointment, and Mr. Lane again gave a doctor's note to his employer.

14. Mr. Lane gave ATI all the doctor's notes for the days when he missed work to visit his son's doctor. Mr. Lane gave these doctor's notes to Mr. Spencer or Team Lead, Brad Roberts ("Mr. Roberts"). If there was another Team Lead on Duty, Mr. Lane would give the paperwork to them instead.

15. In the beginning of April 2023, Mr. Lane informed ATI that his son was having an eye surgery in May 2023.

16. ATI assured Mr. Lane that they would give him the time off and that it would not be a problem.

17. In fact, Mr. Lane was saving 8 hours of his sick leave time in order to use it for his son's surgery in May 2023. Therefore, he did not take any leave in April 2023.

18. During Mr. Lane's employment with ATI, Mr. Lane traveled to work via Uber.

19. On April 20, 2023, Mr. Lane was taking an Uber to work when his driver became stuck in traffic due to an accident.

20. Upon information and belief, ATI's policy is to allow employees to be up to 10 minutes late to work without any consequence.

21. Mr. Lane let his supervisor know that he would be approximately 12 minutes late due to an accident on the Parkway East (I-376).

22. A few moments later, Spencer LNU called Mr. Lane and stated that ATI was terminating his employment because his tardiness was an infraction and he had already used all his sick leave.

23. Upon information and belief, ATI allowed other employees to miss over 40 hours of work without negative consequence.

24. After ATI terminated Mr. Lane's employment, Mr. Lane checked his ADP application that showed he only used 32 of the 40 hours of sick leave available.

25. As such, ATI's reason for terminating Mr. Lane was pretext.

26. ATI's terminated Mr. Lane's employment because of Mr. Lane's association with his disabled son.

## COUNT I
## ASSOCIATIONAL DISABILITY DISCRIMINATION
## IN VIOLATION OF THE ADA AND THE PHRA

27. Mr. Lane incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

28. The ADA's "association provision" protects qualified individuals from employment discrimination based on the "known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

29. According to the PHRA, 43 Pa. Cons. Stat. §995(l), "it shall be an unlawful discriminatory practice . . . to exclude or otherwise deny equal jobs or benefits to a person because of the handicap or disability of an individual with whom the person is known to have a relationship or association."

30. The terms "relationship or association" includes family members. See 29 C.F.R. § 1630.8; *See Den Hartog v. Wasatch Academy*, 129 F. 3d 1076, 1082 (10th Cir. 1997) (Citing 29

4

C.F.R. § 1630.8) ("A family relationship is the paradigmatic example of a 'relationship' under the association provision of the ADA.")

31. In order to establish a *prima facie* case for discrimination by association under ADA and survive a motion to dismiss for failure to state claim, a plaintiff must prove that: (1) she was qualified at the time of the adverse employment action, (2) she was subject to an adverse employment action, (3) at the time of the adverse employment action, the plaintiff was known by his employer to have a relative or an associate with a disability, and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the termination decision. *Pollere v. USIG Pa., Inc.*, 136 F.Supp.3d 680, 685, No. 15–2421, 2015 WL 9260053, at *3 (E.D.Pa. Dec. 18, 2015) (citing *Barthalow v. David H. Martin Excavating, Inc.*, No. 5–2593, 2007 WL 2207897, at *3 (M.D.Pa. July 30. 2007)).

32. The PHRA is largely similar to the ADA but not limited in scope by the ADA, and offers greater protection. *Harrisburg Area Cmt. Coll. V. Pa. Human Rels. Comm'n*, 245 A. 3d 283, 287-88 (Pa. Commw. Ct. 2020).

33. Mr. Lane was an employee of ATI under the ADA and PHRA.

34. ATI was an employer of Mr. Lane under the ADA and PHRA.

35. Mr. Lane was qualified for the essential duties of his job position.

36. ATI terminated Mr. Lane's employment on April 20, 2023.

37. ATI was aware of Mr. Lane's relationship with his son, who had disabilities. Mr. Lane gave ATI prompt notice of such doctor's visits through verbal communication as well as through written communications from his son's doctors.

38. ATI allegedly terminated Mr. Lane for going over his vacation time of 40 hours. However, Mr. Lane only used 32 hours of sick leave as of April 20, 2023.

39. Upon information and belief, ATI terminated Mr. Lane's employment because of his association with his disabled son, given Mr. Lane's need to take time off work to take his son to his medical appointments.

40. Additionally, ATI terminated Mr. Lane's employment within a month of his notification that he would be taking time off for his son's surgery in May 2023. The temporal proximity raises an inference that Mr. Lane was unlawfully discriminated against due to his known association with his disabled son.

41. ATI's actions were the proximate and legal cause of Mr. Lane's injuries, harm, and damages.

42. ATI's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Mr. Lane.

WHEREFORE, Plaintiff, John Lane, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorneys' fees and any other relief this Court deems just and proper.

**COUNT II**
**DISCRIMINATION**
**IN VIOLATION OF THE REHABILITATION ACT OF 1973**

43. Mr. Lane incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

44. Because ATI receives federal funding, ATI is subjected to the requirements of the Rehabilitation Act of 1973 ("Rehabilitation Act" – 29 U.S.C. §§ 701 *et seq.*); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir.2007).

45. "It is widely accepted that under both the [Rehabilitation Act] and the ADA, non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1142 (11th Cir. 2014) (citing *Addiction Specialists, Inc. v. Twp. Of Hampton*, 411 F.3d 399, 405-09 (3d Cir. 2005)).

46. The standards to determine whether the Rehabilitation Act has been violated are the same standards as stipulated in the ADA. 29 U.S.C. § 794(d).

47. Mr. Lane was an employee of ATI.

48. ATI was an employer of Mr. Lane.

49. Mr. Lane was qualified for the essential duties of his job position.

50. ATI terminated Mr. Lane's employment on April 20, 2023.

51. ATI was aware of Mr. Lane's relationship with his son, who had disabilities. Mr. Lane gave ATI prompt notice of such doctor's visits through verbal communication as well as through written communications from his son's doctors.

52. ATI allegedly terminated Mr. Lane for going over his vacation time of 40 hours. However, Mr. Lane only used 32 hours of sick leave as of April 20, 2023.

53. Upon information and belief, ATI terminated Mr. Lane's employment because of his association with his disabled son, given Mr. Lane's need to take time off work to take his son to his medical appointments.

54. Additionally, ATI terminated Mr. Lane's employment within a month of his notification that he would be taking time off for his son's surgery in May 2023. The temporal proximity raises an inference that Mr. Lane was unlawfully discriminated against due to his known association with his disabled son.

55. ATI's actions were the proximate and legal cause of Mr. Lane's injuries, harm, and damages.

56. ATI's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Mr. Lane.

WHEREFORE, Plaintiff, John Lane, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorneys' fees and any other relief this Court deems just and proper.

**JURY TRIAL DEMANDED.**

                                                Respectfully Submitted,

                                                **J.P. WARD & ASSOCIATES, LLC**

Date:   February 27, 2024               By: /s/ *Justin M. Bahorich*
                                                  Justin M. Bahorich, (Pa. I.D. No. 329207)

                                                  J.P. Ward & Associates, LLC
                                                  The Rubicon Building
                                                  201 South Highland Avenue
                                                  Suite 201
                                                  Pittsburgh, PA 15206

                                                  *Counsel for Plaintiff*